John J. Dillon, J.
This is a motion for an order dismissing the complaint and granting defendant summary judgment. The defendant, hereinafter referred to as General, is a New York corporation which is engaged in the business of selling supplies and equipment to dentists and furnishing services in planning and setting up dental offices.
In late 1960 and for some years prior thereto, Dr. Kessler and Dr. Hunter were associated together in the practice of dentistry. Joseph B. Eglauf was General’s representative and he transacted business on behalf of General with both dentists. In late 1960 and early 1961, Dr. Hunter terminated his association with Dr. Kessler and opened his own office. General asserts that at that time it was requested by Dr. Hunter to sell equipment and supplies and to furnish services to him. Dr. Hunter *46 had been associated with Dr. Kessler pursuant to contract which a court of competent jurisdiction has since determined was breached by Dr. Hunter. That determination was made in an action brought by Dr. Kessler against Dr. Hunter for breach of contract and for injunctive relief. In the present action, gravamen of the complaint is that the defendant General by dealing with Hunter, and by furnishing him with credit, services, supplies and equipment, committed the tort of inducing a breach of the contract between Kessler and Hunter (Hornstein v. Podwitz, 254 N. Y. 443; Campbell v. Gates, 236 N. Y. 457). General alleges that it had no knowledge of any contract between Kessler and Hunter until January of 1961. It is claimed that by that time, the contract had been breached and the association between the two dentists had already been terminated.
Letters written to General by Dr. Kessler on January 14,1961, and by his attorney on March 21, 1961, do not complain of inducing a breach of contract but rather of “ aiding and abetting Dr. Hunter in his various breaches of contract ’ ’ by continuing to furnish him with supplies and equipment. It would appear from the affidavit executed by Joseph R. Eglauf that General did no affirmative acts and made no representations to Dr. Hunter in order to encourage or induce him to terminate his relationship with Dr. Kessler. The first affirmative acts by General were performed at the end of December, 1960 and during January of 1961 when its representative Eglauf was consulted in connection with the planning and layout of Dr. Hunter’s office and the purchase of office equipment and supplies. It is doubtful whether General had any knowledge or information of any contract between Dr. Kessler and Dr. Hunter until on or about January 6, 1961. At that time the relationship had been terminated and the breach of contract had already occurred.
In essence, plaintiff’s main complaint is that General agreed to and in fact did transact business with Dr. Hunter. If the plaintiff could recover damages against the defendant for such acts, then every supply house and every credit institution and for that matter every corporation or individual who furnished goods or services under similar circumstances could be charged with having committed a tort. Grave harm might result if a businessman, lending institution or commercial corporation were required to be that circumspect in its dealings with the public. Even if the court were to assume the correctness of plaintiff’s assertion that General had knowledge of the contract before it was breached and that it nevertheless agreed to furnish Dr. Hunter with supplies, equipment and services, this would not constitute the commission of a tort. The only act with *47 which General is being charged is that it agreed to do business with Dr. Hunter. This case is in no way analogous to State Enterprises v. Southridge Cooperative (18 A D 2d 226), which the plaintiff has cited in support of his position. There the parties were in the same business and the complaint alleged that defendant induced plaintiff’s customer to breach its contract with the plaintiff and enter into a similar contract with defendant. The court in sustaining the complaint and denying summary judgment held that to establish a cause of action for inducing a breach of contract it would be sufficient to prove that a party who had knowledge of the existence of a contract ‘ ‘ intentionally made an offer of better terms ’ ’ with the intent of persuading another u to breach its contract.” That is not the factual pattern in the instant case. At best, the defendant is charged with having agreed to do business with plaintiff’s associate prior to the termination of the association. Neither the theory upon which plaintiff is proceeding nor the facts alleged on plaintiff’s behalf in the opposing affidavit executed by his attorney are sufficient to sustain the complaint. In reaching this decision, the court has in mind the fact that defendant, does not have a monopoly on the goods and services which it furnishes. If the defendant had been unwilling to do business with Dr. Hunter there is no basis for believing that its competitors would have done likewise. Accordingly, the motion for summary judgment is granted.