CHARLES J. ROGERS, Appellant, *v.* ALEXANDER W. THOMSON and Others, Copartners Doing Business under the Firm Name and Style of THOMSON & McKINNON, Respondents.

First Department, February 26, 1926.

Brokers — stockbrokers — action to recover shares purchased by defendants for plaintiff and held as collateral for balance due — first cause of action alleging that defendants transferred business to another, consent by plaintiff to transfer of account on condition that shares be transferred, failure of defendants to transfer shares and tender and demand is sufficient — novation not shown — broker may repledge stock on condition of immediate repossession upon proper tender — second cause of action on theory of conversion alleging transfer of shares to new brokers on conditions stated and repledge by them to defendants is insufficient in failing to allege tender and demand on new brokers and refusal to surrender shares — defendants liable for conversion under circumstances only if new brokers would be liable.

The complaint in an action to recover the value of shares of corporate stock purchased by the defendants for plaintiff's account and held by the defendants as collateral for the balance due thereon sufficiently states a cause of action by alleging that after the purchase of the shares by the defendants for the account of the plaintiff, the defendants transferred their brokerage business to another; that the plaintiff consented to the transfer of his account to the new brokers on condition that said shares be transferred; that the shares were not trans-

ferred by the defendants to the new brokers and that plaintiff had made tender of the balance due to the defendants and demanded the delivery of the shares which the defendants had refused.

The facts stated do not show a complete novation resulting in the substitution of the new brokers in the place of the defendants, and, therefore, the plaintiff may proceed on the facts stated against the defendants.

A stockbroker may repledge stock left with him by a customer as collateral only upon terms of immediate repossession upon tender of the exact amount owing to the broker by his customer, and, therefore, a broker cannot be charged with conversion unless a tender and demand is made for the stock he holds as collateral.

Accordingly, a second cause of action on the theory that the defendants converted the shares of stock in question is insufficient which alleges that the defendants transferred the shares to the new brokers and that they, in turn, repledged them to the defendants, for to make the complaint sufficient as to this cause of action there should have been an allegation that a tender of the balance due and a demand had been made on the new brokers who refused to deliver the shares in question, for unless the new brokers are liable for conversion, the defendants cannot be guilty of conversion by receiving the shares on a pledge.

Martin, J., dissents.

APPEAL by the plaintiff, Charles J. Rogers, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 4th day of April, 1925, granting defendants' motion to dismiss the complaint, with leave to the plaintiff to amend.

*Griggs, Baldwin & Baldwin [Edwin N. Moore* of counsel], for the appellant.

*Jackson, Fuller, Nash & Brophy [Outerbridge Horsey* of counsel], for the respondents.

FINCH, J. The question to be determined on this appeal is whether the complaint states facts sufficient to constitute a cause of action. The defendants are stockbrokers with whom the plaintiff had an account. The complaint for a first cause of action alleges that at plaintiff's request the defendants purchased for his account 100 shares of Remington Typewriter stock, which were carried for plaintiff with certain other stocks and held by defendants as collateral security for the payment of the balance owed by plaintiff; that an account was rendered to plaintiff showing a balance due as of August 1, 1921; that on or about said first day of August the defendants sold the branch of their business at which plaintiff had his account to another brokerage concern and that the plaintiff consented that his account with defendants, including the Remington Typewriter stock, should be transferred to said other brokerage firm and that plaintiff's stock should upon such transfer be delivered by defendants to said other brokerage

firm.   The complaint further alleges that on transferring plaintiff's account the defendants did not deliver plaintiff's 100 shares of Remington stock, but retained the same as security for the indebtedness to defendants arising because of the purchase price of the aforesaid branch business sold by the defendants to said other brokerage firm.   The complaint further alleges that on ascertaining this fact the plaintiff tendered to the defendants the balance due upon the account, with interest, and demanded his said typewriter stock, which defendants refused to deliver, to plaintiff's damage in the sum of $2,500.

For a second cause of action the complaint alleges the aforesaid facts down to the consent of the plaintiff that his account be transferred, and then alleges that the other brokerage firm to whom the account was transferred received said Remington stock but did not continue to retain the same, but wrongfully repledged said stock to the defendants as security for the indebtedness to the defendants because of the purchase price of the aforesaid branch business.   Upon learning these facts plaintiff tendered to the defendants the amount due on his account and demanded his stock, as aforesaid.

For a third cause of action the aforesaid facts are alleged down to the point of plaintiff's consent to the transfer of his account. It is then alleged that the firm to whom defendants' said branch business was transferred did not continue to retain the Remington stock but, without plaintiff's knowledge, repledged said stock to the defendants as security for an indebtedness by said firm to the defendants greater in amount than the sum remaining due from plaintiff to the defendants for the said purchase price of the stock, of which facts, it is alleged, the defendants had notice.   It is further alleged, as in the other causes of action, that on learning these facts demand was made by plaintiff on the defendants for the stock, as aforesaid.

We are of the opinion that the complaint sets forth a good cause of action, in so far as the first cause of action is concerned.   Plaintiff's consent that his account be transferred to another concern was coupled with the condition that the stock which the defendants had purchased on his behalf be delivered to the concern to whom the account was transferred at the time of the transfer of the account.   As noted defendants failed to include the Remington stock in this transfer.   There thus having been a failure on the part of the defendants to transfer and deliver the plaintiff's Remington stock with the remainder of the account, the condition upon which plaintiff's consent to the transfer of the account was obtained was not performed and, therefore, there was no novation

and the plaintiff was entitled to receive his stock from the defendants upon tendering the amount due to the defendants. To constitute a novation there must be an extinguishment of the original obligation and an executed mutual agreement among the parties to both the old and the new obligations, whereby the new is substituted for the old. (*Inman* v. *Burt Co.*, 124 App. Div. 73; affd., 195 N. Y. 558.) In the case at bar there was no actual novation since there was no executed mutual agreement of substitution among the parties, and if reliance is placed upon the aforesaid consent of the plaintiff, as noted, such consent was a qualified consent only and the condition to which it was subject never was complied with and, hence, no novation took place. As was said in *Cooke* v. *McAdoo* (85 N. J. Law, 692): " For the legal rule is well settled that if an agreement intended as a novation is conditional, the novation can only take effect by the performance of the condition before the debt is extinct. 29 Cyc. 1134."

In so far as the other two causes of action are concerned, the appellant states that these are predicated upon the theory of there having been a complete novation but that the defendants became liable for a conversion of the stock thereafter. Assuming there was thus a novation because all the stock in the account was transferred and the Remington stock then repledged, the brokers to whom the account was transferred then became the pledgees of the stock, with the usual rights and liabilities of brokers in such case. As was said in *Matter of Mercantile Trust Co.* (210 N. Y. 83, 86): " For purposes of general definition the relationship between customer and broker in relation to stocks which have been purchased and are being carried by the latter on a margin, has been held to be that of pledgor and pledgee."

The duty of a broker who purchases stock for a marginal account is either to keep this stock or a like amount of similar stock in his possession, or if he repledges the same, not to do so otherwise than upon terms of immediate repossession upon tender of the exact amount owing to the broker by his customer.

A broker, therefore, who is requested by his customer to purchase securities for the customer's account may purchase such securities in his own name and may repledge or otherwise dispose of the securities, the right so to do, however, being coupled with the condition that the broker must retain in his possession or under his control like securities in a sufficient amount, so that the client may obtain immediate possession of the securities to which he is entitled upon paying the amount due. As was said by Haight, J., in *Caswell* v. *Putnam* (120 N. Y. 153, 157): " The plaintiff had not ordered the purchase of any specific shares of stock, that which

had been purchased was taken by the defendants in their own names for and on account of the plaintiff, who had the right to have it delivered to him upon his paying the balance of the purchase-price. * * * The defendants, under the arrangement, undertook to hold 100 shares of the stock, subject to his order, and this agreement was fully performed on their part, if at all times during the transaction they held on hand that amount of the Union Pacific Railroad Company stock, with which they could and did comply with any orders which he should or did make in reference thereto. One share of stock is not different in kind or value from every other share of the same issue and company. They are unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon or harness. The stock has no ear-mark which distinguishes one share from another, so as to give it any additional value or importance; like grain of a uniform quality, one bushel is of the same kind and value as another. This doctrine appears to be well sustained by authority. In the case of *Horton* v. *Morgan* (19 N. Y. 170) it was held that where the broker is to advance a portion of the purchase-money upon the security of the stock purchased, he may properly take title in his own name, and in such case he is not bound to keep it separate from other stock of the same kind owned by him, but fulfills his duty if he keeps in his possession, ready to deliver to his principal on demand, an amount of stock equal to that purchased by him. In the case of *Stewart* v. *Drake* (46 N. Y. 449–453) ALLEN, J., in delivering the opinion of the court, says that the duty of the brokers was fully performed ' if they had at all times stock on hand to meet the demand of the plaintiff when called upon or when required by the exigencies of the dealings between the parties.' "

Upon this assumed state of facts, namely, that there had been a novation, the relation of broker and customer between the plaintiff and defendants entirely ceased, and instead a relation of broker and customer came into being between the plaintiff and the brokers to whom his account was transferred. It is these latter brokers, therefore, who are accountable to the plaintiff. It is only upon the theory that there had been a conversion by the substituted brokers, in which the defendants participated, that the defendants can be held liable in conversion. It is necessary, therefore, for the complaint to allege facts showing that there had in fact been a conversion. The mere allegation that there had been a repledge of the plaintiff's stock by the substituted brokers is not sufficient to sustain a cause of action, because from this the conclusion does not follow that said brokers may not have

retained in their possession similar stock which they could have delivered to the plaintiff had he demanded the same. Moreover, as between a broker and his client, such a conversion does not arise until it is shown that the broker has been unable to meet his obligation to deliver the client's stock upon demand and tender of the amount due. As was said by Scott, J., in *Mayer* v. *Monzo* (151 App. Div. 866, 868): " It is settled that a broker who buys stocks for a customer upon margin, and to whom the customer still owes a part of the purchase price, is entitled to pledge the stocks so bought for so much of the purchase price as his customer still owes. The broker's whole duty to his customer under such circumstances is either to have on hand or under his control the stocks which he is carrying for his customer, but he is not required to do both, that is to have the amount of stocks under control and also an equal amount on hand. The customer's right to receive his securities accrues under such circumstances only when he tenders the amount he still owes and demands his stock. The refusal of such a demand constitutes the conversion. If the broker has the stock under his control (even if it be pledged), and can resume possession by paying the amount borrowed thereon, not exceeding the amount which the customer owes on account of the purchase, there has been no conversion."

Also in *Lawrence* v. *Maxwell* (53 N. Y. 19, 23) the court said: " The right of the pledgee to hypothecate the property pledged may deprive the pledgor of his remedy against third persons who have the property in possession, but will not affect the rights and remedies of the original parties to the pledge upon payment of the debt secured. The right to use, as well as the right to retain the pledge ceases the instant the lien is discharged by the tender or payment of the debt, or the performance of the covenant or engagement for which the security is given. When the offer and tender of payment of the debt was made to the defendant, the lien was discharged and the right of the plaintiff to his property became absolute. * * * Conceding the right to use the stock pledged, by way of hypothecation, or otherwise, as claimed, and that it was at the time of the tender and demand lawfully out of the actual possession of the defendant, it was his duty at once to regain the possession and restore the same to the plaintiff. A neglect or refusal to do so gave to the plaintiff an action as for a conversion of the property."

Also in *Rothschild* v. *Allen* (90 App. Div. 233; affd., 180 N. Y. 561) Hatch, J., said: " When they pledged the stock to secure their own loans they did so at the peril of being able to deliver the same *if delivery was demanded by the owner and he tendered pay-*

*ment."*   (Italics not in original.)   (See, also, *McIntyre* v. *Whitney*, 139 App. Div. 557; affd., 201 N. Y. 526.)

The foregoing authorities sustain the principle already noted that shares of stock purchased by a broker must not be pledged, except in such a manner that immediate possession may be had upon tender of the amount due from the customer unless the broker has in his possession a like amount for delivery to the customer.   Before an action in conversion, however, can be maintained against such broker, it is necessary for the plaintiff to show a demand and tender of amount due.

The valid objection to the second and third causes of action is, therefore, that the plaintiff has failed to show a demand and tender of amount due to the substituted brokers and hence no conversion as to them is alleged.   Since the defendants can only be liable for conversion upon the theory that they participated in a conversion of which the substituted brokers were liable and it has been shown that said substituted brokers are not so liable, it follows that the defendants are not liable in conversion so far as the allegations of the second and third causes of action are concerned.   As noted, however, the first cause of action is valid, and hence it was error to dismiss the complaint.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., dissents and votes for affirmance.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.